Good morning, Your Honors. May it please the Court. Chen Nissenboim and my colleague Eric Johnson, certified law students at UCI School of Law, appearing under the supervision of Catherine Davis and Peter Afraziabi, on behalf of the petitioner, Mr. Quintanilla Orellana. I will deliver the opening argument, and my colleague will argue in rebuttal to the government. I'd like to reserve three minutes for that purpose. Okay. Keep your eye on the clock. It counts down. Yes, Your Honor. This Court should grant the petition and remand to the BIA for reconsideration. With regard to the petitioner's asylum claims in the en banc decision of Enriquez-Rivas, which came subsequent to the BIA decision in this case, the Court found that a crime witness social group almost identical to the petitioner's group here may be cognizable. And the Court has since remanded 43 cases in light of Enriquez-Rivas and other intervening law. The government does not argue against the merits of the petitioner's claims, but instead argues that the Court lacks jurisdiction to review them because the petitioner did not exhaust his crime witness definition before the BIA. But the petitioner did exhaust his crime witness social group before the BIA because he consistently argued that he was persecuted on account of his status as a crime witness. How specific did his argument need to be in order to exhaust? Well, the legal standard, Your Honor, is that the petitioner need only put the BIA on notice that he is contesting the I.J.'s determination with regard to a particular social group. Now, in his brief to the BIA, the petitioner argued that MS-13 gang members persecuted him because of statements he gave to the police against him. And he expressly challenged the I.J.'s decision with regard to membership in a particular social group and explained that he was not a victim of a random criminal act, meaning he was targeted because of his status as a crime witness. The I.J. in her decision expressly noted that MS-13's targeting of the petitioner was on account of his being an honest citizen and reporting this crime and the perpetrators. But the I.J. simply found that this was not a protected ground. Let me get some clarification on Judge Fletcher's question. So what is it that you think is the protected social group today? What is the group? What is it that you want the BIA to reconsider? The petitioner's group is defined by persons, crime witnesses, who give statements to the police against gang members. Okay. And so you have a couple of things. One is that you're a crime witness, and two, that you're a crime witness against a gang. Now, did he argue those two elements to the I.J.? Yes, Your Honor, of course. And he consistently argued this throughout the process. He, starting with his application for asylum, moving through his testimony before the I.J., then his notice of appeal, and finally the brief to the BIA. Now, is there a difference between recounting the facts, this is what happened to me, and arguing that these facts are the basis for protective status? Well, there may be a difference. The legal standard is putting the BIA on notice, so I would submit that reciting the facts in a particular context may be sufficient to provide notice. But the petitioner here did so in the argument section of his brief. I'm looking at the BIA's opinion, and I'm looking at the bottom of page one over to page two. It's just a two-page decision. And the BIA characterizes it, and it appears to be a quote, people who have been persecuted by gang members in a country, which is unable or unwilling to control gang violence. There's no mention there of being a witness against the gang violence. Yes, Your Honor.  It comes from the brief to the BIA. Okay. So it appears that they did not say that we are a crime witness against gang members. Is that right? Yes, Your Honor. The phrasing of that group is different, but we submit that. This goes back to Judge Fletcher's initial question. How close does the fit have to be between what you have pressed to the IJ and to the BIA, and what you urge us today? You're asking us to remand this on the basis of Enriquez Rivas, but it doesn't appear that you have argued below to the BIA that he was, that his predictive status was on account of his being a witness against gang members. No, Your Honor. The phrasing of the group proposed in the brief to the BIA is different, but we submit that the meaning is the same, and it stands for the same social group. Words may not be interpreted in a vacuum. It is context that gives. Okay. But what is there that was to key the BIA that you were arguing that he was a witness who was going to be persecuted because he was a witness? Right. So once more, the petitioner, besides arguing that MS-13 persecuted him on account of his status as a crime witness and explaining that he was not a victim of a very random criminal act, expressly challenged the IJ's decision. The IJ's decision pertained to the petitioner's status as a crime witness. That is the only status the petitioner ever advanced as a basis for relief. But even assuming that the government is correct in arguing that the petitioner did not raise a crime witness definition before the BIA, he still exhausted all remedies available to him as of right. In Valesko v. Holder and Soriano v. Holder, cases that preceded the BIA's decision in this case, this Court held that the groups of former material witnesses for the government and government informants were not cognizable. And these social groups are so analogous to the petitioner's group here that the holdings of these cases would have applied to the petitioner's case as well. Let me ask you a different question. Of course, at the time, the whole problem we're having here is that Enriquez-Rivas had not yet been decided. Because it had not yet been decided, there's an argument that he didn't need to make the argument because it wasn't available to him. So did he need to exhaust by raising the argument? No, Your Honor. That is exactly our alternative argument is that under Valesko and Soriano, a remedy would not have been available to the petitioner as of right before the BIA. And so although he did exhaust his social group before the Board, he was not required to do so because it was not available to him as of right prior to Enriquez-Rivas. Okay. Now, with the Court's permission, I'd like to briefly discuss the petitioner's CAF claim. In this case, the BIA applied the wrong legal standard to find that the Salvadoran government would not acquiesce in the petitioner's torture. The BIA stated that although the petitioner argued that the Salvadoran government is unable to control the gangs, that is insufficient to establish acquiescence. But that is the wrong legal standard under Madrigal v. Holder. In Madrigal, the Court explained that the acquiescence analysis requires examining the efficacy of government efforts. And so the Court found that the BIA was required to determine whether the government was not just willing but also able to control criminal organizations. In Garcia-Miliana case, the government relies on, although the Court said that general ineffectiveness in investigating crime, as were the facts of that case, was not sufficient to establish acquiescence. Acquiescence may be shown by corruption or other inability to oppose criminal organizations. Those are the facts of this case. So the case should be remanded for further review by the BIA under the correct standard. And if there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Your Honor. May it please the Court. My name is Edward Wickers. I represent the respondent in this matter. The only legal claim that Quintanilla presented to the Board was an argument to expand the definition of particular social group to include all individuals persecuted by gang members regardless of motive. I've just reread the opening brief in front of the BIA that doesn't seem to be correct. I don't agree with your reading of that brief. Yes, Your Honor. I was looking primarily at page 10 of the record, page 4 of the opening brief, where, and I'm going to quote from the opening brief, the respondent asks the BIA to broaden the definition of member of a particular social group in PSG in the brief. In light of human rights concerns for citizens in similarly situated countries, respondent strongly asserts that on balance, grave human rights concerns in certain countries should outweigh any potential concerns with respect to the broadening of the MPSG definition. On the prior page at the bottom, respondent is mindful that an argument can be made that classifying individuals similarly situated might open up the floodgate to similar claims as the definition of MPSG may be broadened. Basically, what petitioner was trying to do from the earlier part of the brief? Certainly, Your Honor. Okay. On page 1 of the brief, AR 07, he recounts the facts. Witnessed the shooting. Gang members went to respondent. Brethren, a lot of threatening with death if they did not withdraw the statements given to the police and the hospital. Okay. Analysis. I'm on the next page. Immigration judge held that fleeing from gang members was not persecution. Threats of serious harm, particularly when combined with confrontation or other mistreatment, may constitute persecution. I'm now skipping down to line 12. Here, the respondent was threatened through personal encounters with gang members, demanding respondent to withdraw his statements to the police. That is directly in contradiction to the statement of the IAJ that that wasn't persecution. That strikes me as an Enriquez-Rivas argument. Why is that not an Enriquez-Rivas argument? He describes the fact that there were witnesses. He says that we were threatened with death. He then says IAJ says that wasn't persecution. And then he says here he was threatened with personal encounters by the gang on account of what happened. Why is that not an Enriquez-Rivas argument? Your Honor, because there are two components to a particular social group claim, the factual component, which is discussed here, and then the legal component, which is the definition of the parameters of the group. And as the dissent in Enriquez-Rivas noted, this is the most amorphous of the grounds for protection. You know, I joined that dissent, but we were bound by Enriquez-Rivas. So I don't think there's anything to be gained by citing the chief judge's dissent in Enriquez-Rivas. Yes, Your Honor. I'm not citing it for authority, just for the proposition that— It may be the broadest thing we've ever done, but it doesn't matter. That's what's now established. Why shouldn't we just send this back to the BIA and have the BIA straighten this all out? Because the only—  Yes, Your Honor. The BIA did not have the benefit of it. Counsel did not have the benefit of it. It was a developing area. We were overruling prior cases. Why shouldn't we just send this back to the BIA with instructions to figure it all out? And that may benefit Mr. Quintanilla. It may not. Yes, Your Honor. The one thing I would note regarding the portion that the Board did decide here, in footnote 11, the matter of MEVG, where the Board is talking about how it's not following DHS's request for how to define the legal aspect of a particular social group claim. It notes that the criterion that a particular social group cannot be defined on the basis of the persecution alone was a separate component of the particular social group analysis. Enriquez-Rivas, MEVG, WGR, Perrier-Balk, all dealt with particularity and now social distinction. While the claim presented to the Board was essentially what Congress did with the political opinion ground when it added sterilization or forcible abortions based on a national family planning policy, which prior to that did not bear a nexus, but after Congress amended 1101A42, they bore a nexus to political opinion. Here, Petitioner was trying to essentially have anyone that gains target become a particular social group as a legal matter. And that was what the Board decided. Now, the Board didn't address particularity. The Board didn't address social distinction, to use the modern parlance. The Board focused on that one criterion about the persecution defining the group. And to get back to Judge Fletcher's questions about the presentation of the facts of the case and the amorphousness of the PSG definition, the legal claim that must be presented must provide the parameters of the group. And the only parameters that were provided here were that gang members targeted these individuals. And that was why anything considered beyond that, as far as a legal argument Well, you know, gang members targeted these individuals because Yes, Your Honor. It's not just a targeting. It's a targeting for a very specific reason that is very clearly articulated in the first paragraph of that brief. Yes, Your Honor. I would note Quintanilla's testimony that the gang members told his sister, Rinaldo's wife, that the gang members' interest in Rinaldo and Quintanilla was personal in nature. Yeah, but that's a question on the facts. That's not a question of exhaustion. No, Your Honor, but it puts the whole case in perspective because from matter of points, it's through matter of WGR. Yeah, but if you're going to get down into the facts as to whether or not that was the reason that was targeting, you've gone well beyond exhaustion. The exhaustion question is what was the BIA on notice about as to the argument? And the portion that I just read to you, here are the facts as we tell you what the facts are. You can fight later about what they really are. The IJ says there's no persecution. In the same paragraph, they say, but we say there's persecution because they were fleeing from the gang that was threatening for the reasons we gave before in the previous paragraph. Yes, Your Honor. Why is that not exhaustion?  It's, I mean, you're right in one sense, and this is archaically with opposing counsel, is that they don't appear to have refined this very much. Of course, they didn't have the benefit of Enriquez-Rivas either. And the facts of the social group are apparent to the BIA. It's not like they're now arguing that they're being persecuted by the gang because their seventh day in Venice. That would have been so far outside that the BIA just could not be responsible for that, and that would be an unexhausted claim. But it is only a small stretch to add the because. It's obvious to everyone why. They're not being persecuted because they were invited to be gang members and refused. It's a very common claim that we see. Yes, Your Honor. But this one is not. This one is a little different, and it's a pretty disturbing fact pattern. Yes, Your Honor. And I would simply note that in this Court's en banc decision in a BB, it pointed out that the Board is entitled to rely on the legal issues presented in the brief, which goes back to our point that the only legal issue was the motive-less particular social group. And should the Court decline to apply waiver and exhaustion in this case, it should remand on an open record for the Board to address this issue in the first instance. Regarding Petitioner's cat claims, the standard from Garcia-Millian points out that you have to have some evidence of corruption or some unwillingness at the local level of the government to intervene when they're supposed to to prevent the torture. And in this case, whenever Quintanilla testified about what the local officials did, they were arresting the gang members and prosecuting them. And for the ones who shot his father-in-law, they successfully prosecuted him and put him in jail. And there is simply no evidence that shows that the officials at any level of the Salvadoran government would acquiesce or remain willfully blind to any effort to torture Quintanilla. And we would submit that the... Well, is willful blindness the test, or is it simple inability? Pardon me, Your Honor? Is willful blindness the test, or is simple inability to protect the test? Willful blindness is the test, Your Honor. For cats. For cats, yes, Your Honor. The inability is the asylum angle, Your Honor. Okay. Thank you, Your Honor. Thank you. Eric Johnson for Petitioner, Your Honors. Going back to your initial question about the social group, the articulation that Petitioner put in his brief, though it was stated in three different areas, was individuals that have been persecuted by gang members in countries where the government is unwilling or unable to control the gang situation. The gang situation... Still doesn't address the question of being a witness, does it? In this light, it does. The gang situation... It does? Yes, Your Honor. Does the word witness appear in anything you just read us? No. The word witness does not. You're correct. However, the gang situation, the only situation that Quintanilla argues was that he was a crime witness. As Judge Fletcher points out... It's implicit. It is implicit. It was not explicit in anything that you argued to the BIA. You're correct, Your Honor. And quickly to distinguish, the government relies on a bébé to look at the explication of the issues in the brief, and as Judge Fletcher rightly pointed out, it was in the briefs. It was there. If there are no questions... And also, one further thing that the BIA was not confused about what social group we're talking about, the judge specifically cited CA, which was a case about government informants, in finding that this claim should be denied. That's an indication that the BIA was not confused about what social group the petitioner was alleging. If there are no further questions on asylum, I'll move on to CAT. The evidence in CAT, there's significant evidence that the inability of the government, which is part of the willful blindness analysis, was present. And Madrigal and García Milán both found that corruption or other inability may be sufficient to establish acquiescence. And the evidence in the record is clear that then-President Francisco Flores stated openly that, with regards to MS-13 in particular, that if someone is against them, they identify them in the community, and they come out into the streets, and they kill them, and they mutilate them. MS-13 members kill people in broad daylight, on buses, on trains. The director of El Salvador's National Civil Police called for a legislative assembly to grant an immediate approval of a law to protect crime witnesses and potential crime witnesses. And in the first 35- That doesn't sound like the government's being willfully blind, does it? As the court pointed out in Madrigal, it's not simply whether they're willing, but also whether they're able. And in Madrigal, the court required that the government or that the court inquire into the efficacy of the ability. In Madrigal, it was- Well, they were prosecuting the killers of the little six-year-old boy that was the victim here. Yes, Your Honor. There's some evidence that they're prosecuting the killers of the father-in-law. Where's the willful blindness in this case? You cited a sort of broad generalizations, but we've got to have something that will suggest that in this case the government is turning a blind eye to Mr. Quintanilla. Specifically, they're turning a blind eye is not what Madrigal and Garciaballon pointed out. They said some other type of inability may be sufficient. In the particular case here, they did prosecute two of the people who shot the young six-year-old boy, but there were 14 gang members present. Twelve of them continued to roam free and chase the petitioner across El Salvador. So that would be indicative of some sort of other inability in Madrigal's corruption, but it may be something else in this case, and that would be appropriate for the BIA to apply the right legal standard to make that evaluation. If there are no further questions, we respectfully request that this court grant remand for the BIA to consider this case under intervening law in the first light. Thank you very much. Thank both sides for their helpful arguments. This is the second argument this week we've had from UC Irvine, and this is not a comment on the merits. It's a comment on the quality of the work. Thank you very much. Kentia Orellano submitted for decision the next case on the argument calendar, and I'm going to have trouble pronouncing this name as well. Heroption v. Holder.
judges: Singleton, Fletcher, Bybee